### ELLSWORTH *vs.* CUYLER.

Under the former statute of this state concerning uses, the equitable inter-est of the cestui que trust in land was not bound, as against a bona fide purchaser, from the time of the docketing of the judgment against such, but only from the time of issuing the execution upon such judg-ment.

Where the equitable owner of land, under a contract, transferred his interest in such land fraudulently, for the purpose of hindering his creditors in the collection of their debts, and the fraudulent assignee exchanged the land with a bona fide purchaser who afterwards obtained the legal title to such land, without notice of the fraud; *Held*, that the title of the purchaser could not be impeached by the creditors of the fraudulent assignor; and that the claim of the creditors who were intended to be defrauded was transferred to the property which such purchaser had given in exchange.

Under the provisions of the revised statutes, the interest of a defendant in a contract for the purchase of lands cannot be sold on an execution against him; but the remedy of the judgment creditor is by a suit in equity, after his execution at law has been returned unsatisfied.

March 1.   THIS was an appeal from a decree of the vice chancellor of the seventh circuit, dismissing the complainant's bill with costs.   The bill was filed for the specific performance of a contract for the conveyance of a lot and premises in the village of Penn Yan, known as the American Hotel property.   The facts in the case were substantially as fol-lows : In February, 1831, the defendant Cuyler, being the owner of the Penn Yan property, contracted to sell it to C. P. Fulton for $4000.   Three fourths of that sum was to be paid by Fulton in a lot and water privilege at the head of the Crooked Lake, in the town of Urbana, for which he then held a deed from Z. Hammond ; which Urbana property was to be conveyed to Cuyler free from all liens and incumbrances, simultaneously with the execu-tion of the contract.   And Fulton gave Cuyler a deed of

that property, the same day, containing the usual covenants of seisin and warranty; which deed was duly recorded a few days afterwards. The residue of the purchase money was, by the terms of the contract, to be paid in four equal annual payments, from the first of May, 1831, with annual interest from that time; on which day Fulton was to be let into possession of the Penn Yan property. And Cuyler covenanted to give to Fulton or his assigns a good and sufficient deed of that property, upon payment of the whole of that fourth of the consideration of the purchase, whether paid before or at the times mentioned in the contract, and upon Fulton's making to him a perfectly clear, free and unincumbered title to the Urbana property. Fulton took possession of the Penn Yan property at the time specified, and made large and valuable improvements thereon. In February, 1832, and after the commencement of the suit of Colt as hereafter stated, Fulton sold to Ellsworth his interest in the Penn Yan property, for the consideration of $6000, and assigned to him the contract made with Cuyler therefor.

Previous to the conveyance of the Urbana property to Fulton, Hammond the former owner had sold it by contract to Tyler, who went into possession. Tyler afterwards assigned his contract to Fulton, who obtained the title from Hammond under that contract. In May, 1831, Colt, a judgment creditor of Tyler, filed a bill against him to recover satisfaction of his judgments; in which suit Fulton and Cuyler and Ellsworth were made parties defendants. In Colt's bill it was alleged, that Tyler had assigned the contract of the Urbana property, with other effects, to Fulton, for the purpose of defrauding Colt and other creditors of Tyler. That bill also set forth the agreement between Fulton and Cuyler in relation to the sale of the Penn Yan property, and the conveyaace of the Urbana property, in part payment therefor; charging the defendants in that suit with knowledge of the alleged frauds of Tyler. And the complainant in that cause prayed, among other things, that the Urbana property which had

been conveyed to Cuyler, or the lot in Penn Yan which Cuyler had contracted to sell to Fulton, might be charged with the payment of the judgments against Tyler, and might be sold for the satisfaction of those judgments. Tyler and Ellsworth suffered that bill to be taken as confessed against them. Fulton and Cuyler put in their answer, in which the former denied the alleged fraud, and the latter denied all knowledge thereof, and set up the defence that he was a bona fide purchaser, of the Urbana property, without notice that Tyler ever had or claimed any interest therein. Replications were filed to the answers, and that cause was heard on pleadings and proofs, and was pending before the vice chancellor of the seventh circuit, undecided, when the answer of the defendant Cuyler was put in to the bill in the present suit.

On the 8th of May, 1832, Cuyler, after he had heard of the sale and assignment of the contract for the Penn Yan property to Ellsworth, acting under the advice of counsel, and having ascertained that there were judgments outstanding against Fulton which were liens upon the Urbana property, in addition to the claim of Colt in the suit which was then pending, gave notice to Fulton of his intention to rescind the contract. And he offered to reconvey the Urbana property to Fulton, upon his delivering up the contract and the possession of the premises in Penn Yan ; or to complete the contract for the conveyance of the last mentioned premises, according to the terms of the contract, and to reconvey the Urbana property upon receiving the sum of $3000, at which it was taken in part payment, with the interest thereon. On the same day he also served a copy of that notice upon Ellsworth, as the assignee of the contract, and demanded of him the possession of the Penn Yan property. Previous to the making of the contract with Fulton for the sale of the Penn Yan property to him, the defendant Cuyler had mortgaged that property to S. H. Herrick ; which mortgage was outstanding and unsatisfied at the time of the making of the contract ; and a part of it, amounting to something more than $1000, was

still due at the time of filing the defendant's answer in this suit. In June, 1832, Ellsworth offered to pay to Cuyler the $1000, or, as the defendant stated in his answer, the first instalment on the contract, in a draft on Herrick the mortgagee ; which offer was declined. The defendant afterwards commenced an ejectment suit against the tenant of Ellsworth, to recover possession of the property in Penn Yan ; which suit was noticed for trial in June, 1833, and the trial was put off on the application of Ellsworth. And the day after the postponement of the trial, Ellsworth tendered to Cuyler the whole $1000 due on the contract, with the interest thereon, and the costs of the ejectment suit, and asked for a deed of the property. But Cuyler told him it was too late, and declined receiving the money tendered. The bill in this cause was filed in November thereafter, and was heard upon pleadings and proofs in 1837. During the pendency thereof the suit of Colt was brought to a hearing before the same vice chancellor, who afterwards made the decree appealed from in this cause. And he made a decree in Colt's suit, in February, 1834, declaring the assignment from Tyler to Fulton fraudulent ; and that Fulton received the assignment for the purpose of aiding Tyler in defrauding his creditors. It was also declared and decreed that Cuyler was a bona fide purchaser of the Urbana property ; but as the proceeds of the sale of that property were vested in the purchase of the Penn Yan premises, that Colt the complainant had an equitable claim upon Fulton's interest in those premises for the satisfaction of the amount due on his judgments, together with his costs in the chancery suit. The decree therefore directed a receiver to be appointed ; that the interest of Fulton in those premises be sold for the purpose of satisfying the decree ; and that the defendant Cuyler execute to the purchaser, under such sale, such conveyances and covenants as by law and equity he was bound to execute and deliver to Fulton, on such purchaser's complying with the terms and conditions of the contract between Cuyler and

Fulton within a reasonable time. He also decreed a dismissal of the bill as to Cuyler, with costs. Fulton and Cuyler both appealed to the chancellor from that decree. And those appeals were pending when the decree in this cause was made, and when the appeal from the same was entered; but the chancellor afterwards affirmed the decision of the vice chancellor.

*V. Matthews & S. Stevens,* for the complainant.

*J. C. Spencer & M. T. Reynolds,* for the defendant.

THE CHANCELLOR. As the respondent was a bona fide purchaser of the Uurbana property, without notice of any fraud on the part of Fulton in obtaining title to the same, there was no defect of title to that property which could authorize Cuyler to rescind the contract on that ground. Neither were the judgments against Tyler any lien upon the Urbana property in the hands of Cuyler.

It may not be necessary here to inquire whether the interest of a purchaser under a contract could be sold under a judgment, previous to the revised statutes, where such purchaser was in possession at the time of the recovery of the judgment. Clearly, however, it could not, unless the purchase money was all paid, so as to make the holder of the legal title a mere naked trustee for the judgment debtor, who was the real owner of the whole interest in the land. ⁻ (*Bogert* v. *Perry*, 17 *John. Rep.* 351.) The case of *Jackson* v. *Parker*, (9 *Cowen's Rep.* 73,) merely decided that the possession of land was bound by the lien of a judgment; and that a sale of such possession to one who had either actual or constructive notice of the lien did not prevent the judgment creditor from reaching and selling that possession. Or rather, the opinion of the chief justice went that length; but the judgment of the court was placed upon the ground that the transfer of the possession, by the judgment debtor to his son, was voluntary and fraudulent as against the judgment creditor. Even in cases in which the sheriff was au-

thorized to sell the equitable interest of the judgment debtor in real estate, under the fourth section of the statute of uses, (1 *R. L. of* 1813, *p.* 74,) the judgment did not bind the equitable interest of the judgment debtor as against a bona fide purchaser from the time of docketing the judgment, but only from the time of issuing the execution. (*Hunt* v. *Coles, Comyn's Rep.* 226. *Harris* v. *Pugh,* 12 *J. B. Moore's Rep.* 517.) And though a judgment might in equity be considered a lien, as against a purchaser of such an interest with notice of the judgment, a bona fide purchaser who had obtained the legal title, without notice, would be protected against a sale under an execution issued on such judgment. Here, Fulton was the ostensible owner of the Urbana property, under a deed from Hammond the former owner, at the time Cuyler purchased it, and took a conveyance from him of the legal estate. And having given up the possession of the Penn Yan property to Fulton, under the contract, he had the right to claim protection as a bona fide purchaser of the property thus conveyed to him ; and to leave the creditors of Tyler to their remedy, if they had any, against the interest of Fulton in the property at Penn Yan, under the contract of February, 1831. By the revised statutes, the fourth section of the act concerning uses, which authorized a sale of an equitable estate in lands upon execution, was repealed ; it having been rendered useless by the provisions of the revised statutes which turned all mere naked trusts into legal estates in the real owners or cestuis que trust. And the interest of the person holding a contract for the purchase of real estate can now only be reached, by his judgment creditor, by filing a creditor's bill in this court after the return of an execution unsatisfied. (1 *R. S.* 744, § 4.)

There were some outstanding judgments against Fulton, at the time of his conveyance, which appear to have been legal liens upon the Urbana property in the hands of Cuyler. The existence of those liens, however, does not appear to have been fraudulently concealed from Cuyler, any more than the Herrick mortgage upon the Penn Yan

property was fraudulently concealed from Fulton. On the contrary, Cuyler, at the time of making the contract and taking the deed from Fulton, appears to have contemplated the probable existence of outstanding incumbrances upon the Urbana property. And instead of investigating the subject, and having such incumbrances removed before he took his conveyance, he expressly provided in the contract itself for his protection in this respect; by retaining the title to the Penn Yan property until all such incumbrances should be removed. For by the express terms of the contract, which was executed simultaneously with the conveyance of the Urbana property, he agrees to convey the Penn Yan property to Fulton or his assigns upon the payment of the $1000 and interest, and upon Fulton's making to him *a perfectly clear, free and unincumbered title* to the Urbana premises. Having thus protected himself against eventual loss from those incumbrances and carried the contract partially into effect, by taking a conveyance of the property, he had no right to rescind the contract on the ground of the existence of those incumbrances; at least until he had given notice to Ellsworth, the assignee, of the existence thereof, and requested him to pay or discharge the same within a reasonable time. And as time was not made an essential part of the contract, either as to the removal of those incumbrances or as to the payment of the money due on the first of May, 1832, a court of equity ought not to permit him, as against Ellsworth the assignee, to rescind the contract immediately after the money became due, and to retain the $2500 in improvements which had been made upon the Penn Yan property by the purchaser thereof.

Although it appears by the assignment of the contract to Ellsworth, which was duly proved in this case, that he bought the property from Fulton for the price of $6000, a part of which was paid, according to the testimony of some of the witnesses, by assuming debts which had been contracted in making the improvements on the property, still he took that assignment subject to all the legal and equita-

ble claims which existed against the property while Fulton held the contract. He therefore had no right to a conveyance, even if the $1000 and interest had actually been paid, until the title to the Urbana property was made perfectly clear by the removal of the incumbrances thereon arising out of the judgment against Fulton. And if Cuyler had given him notice of those judgments, and asked to have them removed within a reasonable time, and requested payment of the instalment of $250 and the interest which became due on the first of May, 1832, he would have been perfectly justifiable in demanding possession of the Penn Yan property, or in rescinding the sale and reconveying the Urbana property, upon the terms proposed, in case the incumbrances were not removed and the instalment and interest paid without any unncessary delay.

I think, however, Ellsworth had an equitable right to insist that if the contract was not rescinded the purchase money should be applied to the payment of the mortgage money to Herrick, unless Fulton had precluded himself from asking to have that incumbrance discharged by some agreement subsequent to the making of the contract. The defendant in his answer states a conversation on that subject, and says that a mortgage was given on the Urbana property as an indemnity. But I have not been able to find any evidence to support this allegation in the answer; and if such evidence exists I have overlooked it.

The real difficulty in the case, and the only one I presume out of which the litigation between the parties to this bill arose, was the suit commenced by Colt to obtain satisfaction of his judgments out of the Urbana property, or out of that at Penn Yan for which the Urbana property was received in payment. And the rights of the complainant in this case have unquestionably been most seriously affected by the result of that suit. For although that suit did not affect the interest of Cuyler in the Urbana property, which he was entitled to hold as a bona fide purchaser notwithstanding the alleged fraud, he could not during the pendency of that suit convey the Penn Yan property either

to. Fulton or to his assignee without rendering himself liable to Colt, the complainant in that suit, in case he succeeded in establishing the fraud against Tyler and Fulton. And Ellsworth, having purchased of Fulton and taken the assignment of the contract *pendente lite*, must be bound by the result of that suit ; so that he is not now entitled to any decree against Cuyler inconsistent with the decree made in that suit. In relation to the interest of Fulton in the Penn Yan property, under the contract, Cuyler stood in the situation of an innocent stakeholder. It was therefore his duty to resist the present complainant's claim to a specific performance of the contract, while the result of that suit was doubtful.

What then were the rights of these parties at the time the vice chancellor made his decree in this cause ? For the case should be disposed of in the same manner as if the decree in the suit of Colt had been affirmed previous to the making of the decree in this suit ; the decision upon the appeal being now the law of the case, so far as this court is concerned. I see no reason for dismissing the bill without prejudice, and turning the complainant around to a new suit if he had any equitable rights whatever. And if he had not, the bill should have been dismissed absolutely. If the result of that suit had been otherwise upon the question of fraud in the assignment of Tyler's interest in the Urbana property, I think Ellsworth the complainant would have been entitled to a decree for a specific performance of the contract, upon payment of the $1000 and interest, and clearing off the incumbrances upon the Urbana property so as to make Cuyler's title to that property clear and perfect, and upon payment of his costs in this suit and in the ejectment suit ; his costs in the suit of Colt having been already provided for in the decree in that cause. But the result of the litigation in the suit of Colt and the decree which has been made in that case, leaves the question as to the terms upon which a specific performance shall be decreed to be disposed of between the purchaser under that decree and Cuyler. In other words, all the interest which Fulton or his assignee had in that contract, at the

time of the decree in that case, is to be sold under the direction of the master, and Colt's debt and costs are to be paid out of the proceeds of that sale. As the sale is to be subject to all the rights of Cuyler, who is to execute to the purchaser such conveyances and covenants as he was to have executed to Fulton, on such purchaser's complying with the conditions of the contract within a reasonable time, Cuyler does not appear to have any interest in the monies to be raised by that sale. And if there should be any surplus beyond the amount of Colt's debt and costs, it of course must belong to the complainant in this suit, as the assignee of Fulton's interest in the contract. I think the vice chancellor, therefore, instead of dismissing the complainant's bill, should have declared and decreed that he was entitled to such surplus monies, if any there should be. For Cuyler will, of course, under the decree in the Colt suit, be entitled to retain the Urbana property; and nothing is left to be disposed of in this suit but the right to such surplus and the costs. The decree must be reversed and modified accordingly. And the defendant is entitled to his costs against the complainant, except the costs upon the appeal; and neither party is to have them as against the other upon this appeal.